ATTACHMENT "A"

**MEMORANDUM IN SUPPORT OF ANSWER TO PETITION
TO ENFORCE INTERNAL REVENUE SERVICE SUMMONS**

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**OWENSBORO**

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) |
| | ) No. 4:16-MC-3-JHM |
| OWENSBORO DERMATOLOGY ASSOCIATES, | ) |
| P.S.C., | ) |
| | ) |
| Respondent. | ) |
| | ) |

**MEMORANDUM IN SUPPORT OF ANSWER TO**
**PETITION TO ENFORCE INTERNAL REVENUE SERVICE SUMMONS**

Respondent respectfully submits this memorandum in support of its Answer to Petition to Enforce Internal Revenue Service Summons showing cause why it should not be compelled to obey fully the Internal Revenue Service ("IRS") summons as set forth in the Petition.

**STATEMENT OF FACTS**

Artis P. Truett, III, MD (hereinafter "Dr. Truett") and Michael J. Crowe, MD (hereinafter "Dr. Crowe") are equal shareholders in Owensboro Dermatology Associates, PSC, a Kentucky professional services corporation organized on December 17, 1996 (hereinafter "Respondent"). Respondent is a dermatological medical practice specializing in the treatment of skin cancer, moles, eczema, acne, etc. Dr. Truett and Dr. Crowe

are also equal partners in Dermatology Property Management, LLC, a Kentucky limited liability company organized on January 14, 1999 (hereinafter "Dermatology Property") (Respondent and Dermatology Property collectively hereinafter the "Insured Entities"). Dermatology Property is a real estate investment company.

On December 2, 2008, Dr. Truett and Dr. Crowe incorporated Beveled Edge Insurance Company, Inc., a C corporation organized under the laws of the state of Kentucky (hereinafter "Beveled Edge"). Beveled Edge timely elected to be taxed under Internal Revenue Code ("IRC") Section 831(b) as a captive insurance company providing direct property and casualty insurance policies to the Insured Entities to cover risks of the businesses supplemental to those covered by their commercial policies until such time as its surplus grows to a point the Insured Entities could begin to replace their commercial policies with policies issued by Beveled Edge. After jointly operating Beveled Edge from 2008 through the 2011 policy period, Dr. Truett and Dr. Crowe made the business decision to dissolve Beveled Edge and each establish his own insurance company to insure only his portion of the risks of the Insured Entities.

As such, Dr. Truett formed Cavallo Nero Insurance, Inc. (hereinafter "Cavallo Nero") as a C corporation on November 29, 2012 to engage in the business of providing property and

casualty insurance under the laws of the state of Kentucky. Cavallo Nero was organized, operated and timely elected tax treatment as a Section 831(b) captive insurance company providing direct property and casualty insurance policies to the Insured Entities. Similarly, Dr. Crowe formed Micro Cap KY Insurance Company, Inc. (hereinafter "Micro Cap") as a C corporation on November 26, 2012 to engage in the business of providing property and casualty insurance under the laws of the state of Kentucky. Micro Cap was organized, operated and timely elected tax treatment as a Section 831(b) captive insurance company providing direct property and casualty insurance policies to the Insured Entities.

On October 30, 2014, Thuy Luu, a revenue agent out of the Small Business and Self-Employed Division of the IRS, Employee Identification Number 0445090 (hereinafter "Luu"), issued a notice of audit of Beveled Edge's 2012 Form 1120, Respondent's 2012 Form 1120S, and Dermatology Property's 2012 Form 1065. Concurrently with the notices of audit, Luu issued an extensive Information Document Request ("IDR") for each entity. In response, on December 5, 2014 counsel for Respondent mailed responses to each and every request for each entity containing several thousand pages of documentation. Luu issued IDR 2 with regard to Beveled Edge on March 3, 2015, requesting explanation as to the 2012 distributions made and a copy of Beveled Edge's

2013 Form 1120 PC. Beveled Edge wholly responded to each item requested on March 24, 2015. (*See* Exhibit A, "Response to IDR 2 for Beveled Edge.") On July 22, 2015 Luu issued IDR 2 with regard to Respondent which responses were fully provided on August 21, 2015. (*See* Exhibit B, "Cover Letter to Response to IDR 2 for Respondent.")

Additionally, the IDR 2 for Respondent requested that a "tape record phone interview" be scheduled "with one of the partner[s]." (Exhibit B.) Upon Luu's request for a phone interview with either Dr. Truett or Dr. Crowe, a recorded phone interview was scheduled and held with Dr. Truett on August 28, 2015. Luu began the interview by thanking Dr. Truett for his cooperation in providing all responses to the extensive requests and stated that she was "so impressed" with the responses which were received "timely and in an orderly manner." (*See* Exhibit C, "Audio Recording of August 28, 2015 Phone Interview With Dr. Truett.") Additionally, Luu specifically confirmed during the August 28, 2015 interview with Dr. Truett that the interview with Dr. Truett would be sufficient to gather the desired testimony and no interview with Dr. Crowe would be necessary. (Exhibit C.)

Following the call, Luu issued IDR 3 to Beveled Edge on August 30, 2015 requesting copies of life insurance policies owned by two limited liability companies in which Beveled Edge

held an interest, documentation substantiating contributions to said limited liability companies, and documentation substantiating payment of the life insurance premiums by said limited liability companies. Simultaneously, Luu issued an extensive IDR 3 to Respondent and an extensive IDR 2 to Dermatology Property effectively requesting all documentation between each and Cavallo Nero and Micro Cap for the 2012 tax year. Beveled Edge produced each item requested on September 29, 2015. (*See* Exhibit D, "Cover Letter to Response to IDR 3 for Beveled Edge.") Responses to IDR 3 for Respondent and IDR 2 for Dermatology Property were also wholly provided on September 29, 2015. (Exhibit D.)

Luu then issued IDR 4 to Beveled Edge on October 1, 2015 requesting trust documents for each of the trusts equally owning Beveled Edge and tax returns for each trust for the 2012 and 2013 tax years. Beveled Edge produced each item requested on October 5, 2015. (*See* Exhibit E, "Cover Letter to Response to IDR 4 for Beveled Edge.")

On November 13, 2015, Luu issued a notice of audit of both Cavallo Nero's and Micro Cap's 2012 Form 1120s. Concurrently, on November 13, 2015 Luu also issued IDR 1 for both Cavallo Nero and Micro Cap requesting each's Form 1120-PC for the 2013 and 2014 tax years and a copy of all the insurance policies for tax years 2013 & 2014. Cavallo Nero and Micro Cap submitted a

response to IDR 1 for each on December 8, 2015 wholly producing each item requested. (*See* Exhibit F, "Cover Letter to Response to IDR 1 for Cavallo Nero and Micro Cap.")

On December 9, 2015, Luu issued an extensive IDR 4 to Respondent and an extensive IDR 3 to Dermatology Property effectively requesting all documentation between each and Cavallo Nero and Micro Cap for each tax year. Respondent and Dermatology Property submitted responses to each's IDR 4 and IDR 3, respectively, on January 11, 2016 wholly replying to each item requested. (*See* Exhibit G, "Cover Letter to Response to IDR 4 for Respondent and IDR 3 for Dermatology Property.")

On December 10, 2015, Luu then issued IDR 2 for both Cavallo Nero and Micro Cap requesting copies of all bank statements of each for tax years 2012, 2013 and 2014 as well as all insurance agreements between each of Cavallo Nero and Micro Cap and Patriotic Reinsurance Company, Inc. for tax years 2012, 2013 and 2014.  Cavallo Nero and Micro Cap submitted responses to each's respective IDR 2 on December 22, 2015 wholly producing each item requested. (*See* Exhibit H, "Cover Letter to Response to IDR 2 for Cavallo Nero and Micro Cap.")

On January 3, 2016, Luu then issued IDR 3 for Cavallo Nero and Micro Cap requesting all reinsurance distribution checks from Patriotic Reinsurance Company, Inc. to Cavallo Nero and Micro Cap for tax years 2012, 2013 and 2014. Cavallo Nero and

Micro Cap each submitted a response to IDR 3 on January 11, 2016 wholly producing all requested check copies. (*See* Exhibit I, "Cover Letter to Response to IDR 3 for Cavallo Nero and Micro Cap.")

A few months later, in a phone conversation on April 15, 2016 between Luu and counsel for Respondent, Luu stated that her supervisors did not feel Respondent had adequately responded to the document requests and did not feel that the one hour twenty three minute interview with Dr. Truett was long enough. Additionally, Luu stated that she felt intimidated by the number of Respondent's representatives, which consisted of several of Moore Ingram Johnson & Steele, LLP's ("MIJS") insurance attorneys who worked directly with Dr. Truett in Beveled Edge's captive management, Respondent's tax controversy defense attorneys and Respondent's CPA, who were present during the August 28, 2015 phone interview. Consequently, Luu stated that she needed to hold an additional interview with Dr. Truett.

Additionally, after specifically stating multiple times that no interview with Dr. Crowe was necessary, Luu stated that she now needed to hold an interview with Dr. Crowe. Further, in holding the interviews, Dr. Truett and Dr. Crowe would each be required to physically appear at the local Internal Revenue Office in Owensboro, Kentucky. When asked whether she would be physically present for the interview and why it was necessary

for Dr. Truett and Dr. Crowe to physically appear, Luu stated that she would not be present but would still conduct the interviews via phone conference with Dr. Truett and Dr. Crowe physically appearing before a third party IRS representative because she felt intimidated by the number of Respondent's representatives present during Dr. Truett's initial phone interview.

Subsequently, Luu issued a summons dated April 25, 2016, which is the subject of this dispute. Respondent submitted a response to the summons on May 9, 2016 containing a response to each and every request made. (*See* Exhibit J, "Cover Letter to Response to Summons.")

More specifically, request 6 of the summons requests all documents related to or reflecting communications between or among Respondent's employees, owners, principals, contractors, and/or advisors regarding whether to enter the captive insurance program, whether to renew participation each year, and/or whether to purchase each insurance policy issued by Pan-American Reinsurance Company, Ltd., Beveled Edge, Cavallo Nero, Micro Cap, or Patriotic Reinsurance Company. Despite the overly broad nature of this request, in response Respondent has provided Luu with all 2008 and 2009 commercial policies which were reviewed in preparing the insurance tower to determine whether entering the captive insurance program was appropriate based on

Respondent's risks and commercial coverages, the insurance tower process explaining the steps taken by the litigation attorneys of MIJS which analyzes the commercial insurance coverages to determine what captive insurance policies are appropriate based on Respondent's risks and existing coverages, all insurance policies issued to Respondent by Beveled Edge, Cavallo Nero, Micro Cap, Pan-American and Patriotic RE Insurance, all actuarial reports conducted by independent licensed actuaries to determine the premium prices for each policy issued to Respondent, and all relevant non-privileged communications and all relevant communications where the privilege has been waived through inclusion of a third party. These documents consist of all documents reflecting whether to enter or renew participation in the captive insurance program in Respondent's possession and control, with the exception of privileged communications.

Request 7 of the summons requests all documents related to or reflecting communications between Respondent and MIJS, MIJS Captive Management, Patriotic Reinsurance Company, Pan-American Reinsurance Company, Ltd., and/or Celia Clark that preceded entering the captive insurance program, including, but not limited to, memoranda and notes of meetings or telephone calls. Despite the overly broad nature of the request, Respondent has provided Luu with all 2008 and 2009 commercial policies which were reviewed in preparing the insurance tower to determine

whether entering the captive insurance program was appropriate based on Respondent's risks and commercial coverages, the insurance tower process explaining the steps taken by the litigation attorneys of MIJS which analyzes the commercial insurance coverages to determine what captive insurance policies are appropriate based on Respondent's risks and existing coverages, all insurance policies issued to Respondent by Beveled Edge, Cavallo Nero, Micro Cap, Pan-American and Patriotic RE Insurance, all actuarial reports conducted by independent licensed actuaries to determine the premium prices for each policy issued to Respondent, and all relevant non-privileged communications and all relevant communications where the privilege has been waived through inclusion of a third party. These documents consist of all documents reflecting whether to enter the captive insurance program in Respondent's possession and control, with the exception of privileged communications.

Request 8 of the summons requests all documents related to or reflecting the communications between Respondent and MIJS, MIJS Captive Management, Patriotic Reinsurance Company, Pan-American Reinsurance Company, Ltd., and/or Celia Clark that preceded Respondent's renewing participation in the captive insurance program in each year subsequent to 2008, including, but not limited to, memoranda and notes of meetings or telephone

calls. Despite the overly broad nature of this request, in response Respondent has provided Luu with all 2008 and 2009 commercial policies which were reviewed in preparing the insurance tower to determine whether entering the captive insurance program was appropriate based on Respondent's risks and commercial coverages, the insurance tower process explaining the steps taken by the litigation attorneys of MIJS which analyzes the commercial insurance coverages to determine what captive insurance policies are appropriate based on Respondent's risks and existing coverages, all insurance policies issued to Respondent by Beveled Edge, Cavallo Nero, Micro Cap, Pan-American and Patriotic RE Insurance, all actuarial reports conducted by independent licensed actuaries to determine the premium prices for each policy issued to Respondent, and all relevant non-privileged communications and all relevant communications where the privilege has been waived through inclusion of a third party. These documents consist of all documents reflecting whether to renew participation in the captive insurance program in Respondent's possession and control, with the exception of privileged communications.

Request 11 of the summons requests all documents related to the issuance and providing of the policies or contracts issued to Respondent by Pan-American Reinsurance Company, Ltd., Beveled Edge, Patriotic Reinsurance Company, Cavallo Nero, and/or Micro

Cap, including, but not limited to, cover letters, correspondence, and emails. In response, Respondent has provided Luu with all insurance policies issued to Respondent by Beveled Edge, Cavallo Nero, Micro Cap, Pan-American and Patriotic RE Insurance. These documents consist of all documents related to the pricing and underwriting of the insurance policies issued by Respondent in Respondent's possession and control, with the exception of privileged communications.

Request 12 of the summons requests all documents reflecting or related to the claims adjustment process for each claim Respondent submitted under the insurance policies or contracts issued to it by Pan-American Reinsurance Company, Ltd., Beveled Edge, Patriotic Reinsurance Company, Cavallo Nero, and/or Micro Cap, including, but not limited to, correspondence, documents exchanged during the claims adjustment process, notes and memoranda, analyses, settlement documents, and documents describing or outlining claims adjustment procedures. In response, Respondent has provided Luu with the Notice of Claim Form for Claim No. 00012-2013, all documents supporting Claim No. 00012-2013, and the Advisory Letter from MIJS recommending Claim No. 00012-2013 be denied, a Notice of Claim Form for Claim No. 00013-2013, all documents supporting Claim No. 00013-2013, the Coverage Letter from MIJS recommending Claim No. 00013-2013 be covered and payment authorized, a copy of the check from

Respondent to the insured in payment of Claim No. 00013-2013 and a letter from MIJS to Respondent regarding payment of Claim No. 00013-2013. Additionally, Respondent provided email communications regarding notice of the claims to Luu on August 26, 2016. These documents consist of all documents and communications related to claims filed against policies issued to Respondent in Respondent's possession and control and not subject to attorney-client privilege.

Request 15 of the summons requests all documents reflecting or related to oral or written communications between Respondent and MIJS, MIJS Captive Management, Pan-American Reinsurance Company, Ltd., Beveled Edge, Patriotic Reinsurance Company, Cavallo Nero, and/or Micro Cap, regarding an insurance claim and/or the potential filing of an insurance claim, including, but not limited to, emails, memoranda, and notes of meetings or telephone calls. In response, Respondent has provided Luu with the Notice of Claim Form for Claim No. 00012-2013, all documents supporting Claim No. 00012-2013, and the Advisory Letter from MIJS recommending Claim No. 00012-2013 be denied, a Notice of Claim Form for Claim No. 00013-2013, all documents supporting Claim No. 00013-2013, the Coverage Letter from MIJS recommending Claim No. 00013-2013 be covered and payment authorized, a copy of the check from Respondent to the insured in payment of Claim No. 00013-2013 and a letter from MIJS to Respondent regarding

payment of Claim No. 00013-2013. Additionally, Respondent provided email communications regarding notice of the claims to Luu on August 26, 2016. These documents consist of all documents and communications related to claims filed and potential claims against policies issued to Respondent in Respondent's possession and control and not subject to attorney-client privilege.

Request 16 of the summons requests all documents reflecting or related to oral or written communications among the current or former employees, officers, principals, directors, shareholders, partners, members, consultants, managers, associates, staff employees, independent contractors, agents, attorneys, and/or other representatives of Respondent regarding an insurance claim or the potential filing of an insurance claim. Despite the overly broad nature of this request, in response Respondent has provided Luu with the Notice of Claim Form for Claim No. 00012-2013, all documents supporting Claim No. 00012-2013, and the Advisory Letter from MIJS recommending Claim No. 00012-2013 be denied, a Notice of Claim Form for Claim No. 00013-2013, all documents supporting Claim No. 00013-2013, the Coverage Letter from MIJS recommending Claim No. 00013-2013 be covered and payment authorized, a copy of the check from Respondent to the insured in payment of Claim No. 00013-2013 and a letter from MIJS to Respondent regarding payment of Claim No.

00013-2013. Additionally, Respondent provided email communications regarding notice of the claims to Luu on August 26, 2016. These documents consist of all documents and communications related to claims filed and potential claims against policies issued to Respondent in Respondent's possession and control and not subject to attorney-client privilege.

Further, in a phone conversation between Luu and counsel for Respondent on Wednesday, September 7, 2016, Luu stated that the IRS was in possession of all requested documents with the exception of privileged communications.

Respondent's captives are managed by MIJS Captive Management, LLC ("Captive Manager"). Captive Manager is a wholly owned subsidiary of the law firm of MIJS and has no assets, no employees and no income or losses. In fact, Captive Manager does not even have a bank account as all revenue generated by captive management services flows directly to MIJS. Nor does Captive Manager have letterhead as Captive Manager's existence is purely for optical purposes. As such, the insurance attorneys providing captive management services do so through MIJS.

MIJS, which operated a Kentucky office out of Louisville, Kentucky from March, 2011 before transitioning to its current Lexington location at 2333 Alexandria Drive, Lexington, KY 40504, has provided ongoing captive and non-captive legal advice to Dr. Truett and Dr. Crowe personally as well as regarding

Respondent and Dermatology Property since 2006. As specifically pertaining to legal services regarding captive insurance, Dr. Truett and Dr. Crowe each entered into a captive management agreement with MIJS to provide captive management services regarding Beveled Edge on March 20, 2009 which was issued on MIJS law firm letterhead. (*See* Exhibit K, "2009 Captive Management Agreement.") Dr. Crowe and Dr. Truett also entered into an engagement agreement with MIJS to provide captive management services regarding Micro Cap and Cavallo Nero on December 11, 2012 and December 10, 2012, respectively. (*See* Exhibit L, "2012 Captive Management Agreement.")

The only documents not produced in response to the summons request are email communications consisting of various communications between the attorneys of MIJS and Dr. Truett, Vice President of Beveled Edge, President of Cavallo Nero and owner of the Insured Entities, Dr. Crowe, President of Beveled Edge, President of Micro Cap and owner of the Insured Entities, Brenda Clayton, employee providing accounting services to and representative of the Insured Entities and Sara Burden, employee and representative of the Insured Entities. The email communications were made in furtherance of MIJS' providing legal advice pertaining to Respondent's participation in the captive insurance program. Every email communication between MIJS and Dr. Truett, Dr. Crowe, Brenda Clayton and/or Sara Burden

contains the following provisions demonstrating their confidential nature:

> "CONFIDENTIAL NOTICE:
> This email and all attachments are CONFIDENTIAL and intended SOLELY for the recipients as identified in the "To", "Cc" and "Bcc" lines of this email. If you are not an intended recipient, your receipt of this email and its attachments is the result of an inadvertent disclosure or unauthorized transmittal. Sender reserves and asserts all rights to confidentiality, including all privileges which may apply. Pursuant to those rights and privileges, immediately DELETE and DESTROY all copies of the email and its attachments, in whatever form, and immediately NOTIFY the sender of your receipt of this email. DO NOT review, copy, or rely on in any way the contents of this email and its attachments. All rights of the sender for violations of the confidentiality and privileges applicable to this email and any attachments are expressly reserved. This E-mail (including attachments) is covered by the Electronic Communications Privacy Act, 18 USC Sections 2510-2521, is confidential and may be legally privileged."

All relevant communications in which the privilege has been waived through inclusion of a non-privileged third party have been produced to Luu.

Subsequent to the phone conversation between Luu and counsel for Respondent on April 15, 2016, Luu also issued, on April 28, 2016, a summons for Dr. Truett to physically appear at the IRS office in Owensboro, Kentucky on May 19, 2016 at 10:00 o'clock. In a letter dated May 10, 2016, Respondent replied to the summons to appear and a May 9, 2016 fax from Luu requesting written notice that Dr. Truett would appear, notifying Luu that Dr. Truett would not appear on May 19, 2016 stating that the

request for Dr. Truett to physically appear was overly burdensome and meritless. (*See* Exhibit M, "Letter in Response to Summons for Dr. Truett to Appear Dated May 10, 2016.")

In the May 10, 2016 letter, Dr. Truett explained that he had been recently diagnosed with prostate cancer as well as cholangiocarcinoma, a cancer of the bile ducts, and consequently would be unable to appear May 19, 2016 as he was scheduled for surgery on May 17, 2016. (Exhibit M.) Additionally, the response argued that the request for Dr. Truett to physically appear or conduct a second interview of any kind was meritless as Luu already conducted an extensive interview with Dr. Truett on August 28, 2015. (Exhibit M.) As such, Dr. Truett did not appear on May 19, 2016.

With regard to Dr. Crowe, Luu issued, on April 29, 2016, summonses for Dr. Crowe to physically appear at the IRS office in Owensboro, Kentucky on May 19, 2016 at 2:00 o'clock. In a letter dated May 10, 2016, Respondent replied to the summonses to appear and a May 9, 2016 fax from Luu requesting written notice that Dr. Crowe would appear, notifying Luu that Dr. Crowe would not appear on May 19, 2016 stating that the request for Dr. Crowe to physically appear was overly burdensome and meritless. (*See* Exhibit N, "Letter in Response to Summons for Dr. Crowe to Appear Dated May 10, 2016.")

In the May 10, 2016 letter, Dr. Crowe explained that the request for him to physically appear at the IRS office would be overly burdensome as Dr. Crowe is a leading dermatologist in his field with an extremely demanding schedule and the request would result in an undue financial burden as it would necessitate the physical presence of Dr. Crowe's legal advisors when the IRS' objectives could effectively be achieved through a phone interview. (Exhibit N.) Additionally, Dr. Crowe argued that the request for him to physically appear is meritless as Luu would not be present herself, but would instead be conducting a phone interview while Dr. Crowe sits before a third party IRS representative. (Exhibit N.) However, despite Luu's previous assurances that no interview with Dr. Crowe would be necessary and despite his above objections, Dr. Crowe advised that he would cooperate in scheduling a phone interview as had been conducted with his partner, Dr. Truett. (Exhibit N.)

Then, in response to a phone call from Luu requesting that IRS representatives be present in the room with Dr. Crowe while Luu conducts a phone interview from a remote location, Dr. Crowe submitted a letter dated May 13, 2016. (*See* Exhibit O, "Letter in Response to Phone Call Requesting Dr. Crowe's Physical Presence for IRS Interview Dated May 13, 2016.") In the May 13, 2016 letter, Respondent denied the request and requested a phone interview be rescheduled. (Exhibit O.) Dr. Crowe explained that

his partner, Dr. Truett, had been recently diagnosed with prostate cancer as well as cholangiocarcinoma, a cancer of the bile ducts, and as a result the May 19, 2016 date would be extremely overly burdensome given Dr. Crowe's mental state and increased workload resulting from his partner's diagnoses. (Exhibit O.) Additionally, Dr. Crowe again explained that the request to have IRS representatives physically present in the same room with Dr. Crowe while Luu conducts a phone interview is meritless. (Exhibit O.) Again, despite these objections, Dr. Crowe continued to demonstrate his willingness to cooperate in the information gathering process by attempting to schedule a phone interview at a time that would not be so overly burdensome. (Exhibit O.)

Luu then agreed in a fax dated June 8, 2016 to reschedule an in-person interview with Dr. Crowe, which upon clarification again required Dr. Crowe to physically appear before a third party IRS representative at the IRS office in Owensboro while Luu conducts a phone interview. (*See* Exhibit P, "Fax from Luu Dated June 8, 2016") Simultaneously, on June 8, 2016 Luu issued notices of deficiency for the 2012, 2013 and 2014 tax years to Beveled Edge, Micro Cap, Dr. Crowe, Cavallo Nero and Dr. Truett.

In response to the June 8, 2016 fax, Dr. Crowe submitted a letter dated June 9, 2016. (*See* Exhibit Q, "Letter in Response to Fax Requesting Dr. Crowe's In-Person Interview Dated June 9,

2016.") In the June 9, 2016 letter, Respondent again denies the request to hold an in-person interview and again attempts to assist the IRS in obtaining the desired information through holding a phone interview with the IRS. (Exhibit Q.) In refusing the request for an in-person interview, Dr. Crowe asserts that the request is overly burdensome and meritless for the following reasons: 1) Luu advised on numerous occasions that the phone interview with Dr. Truett would be sufficient to gather the desired testimony and no interview with Dr. Crowe would be necessary; 2) Luu provided no reasonable explanation as to why an in-person interview is necessary to effectively acquire testimony from Dr. Crowe when Luu herself conducted 3 other interviews of similarly situated captive owner clients of MIJS and in each instance the interview was conducted over the phone and not in person; 3) Luu provided no reasonable explanation why the in-person interview is necessary for the IRS to effectively gather Dr. Crowe's testimony when Luu herself will not be present, but will instead conduct a phone interview from California while Dr. Crowe sits before one or more third party IRS representatives at an IRS office in Owensboro, Kentucky; 4) Dr. Crowe's principal partner at Owensboro was diagnosed with multiple forms of cancer for which he was in the process of undergoing a series of surgeries which not only affected Dr. Crowe's mental and emotional state, but also significantly

increased Dr. Crowe's already extremely demanding workload; 5) Dr. Crowe's continued cooperation in all requests for documentation, as admitted on several occasions by Luu herself, Dr. Crowe's continued attempts to assist the IRS in obtaining the desired testimony through offering on numerous occasions to hold a phone interview and the lack of requests by the IRS to conduct an on-site review of documentation, or providing any other reasonable explanation to hold an in-person interview, demonstrate that the request for Dr. Crowe to physically appear before a third party IRS representative while Luu conducts a phone interview from a remote location is not made to further a legitimate information gathering purpose; and 6) based on the foregoing, the terms of the request for an in-person interview demonstrate a blatant attempt to intimidate and harass Dr. Crowe. (Exhibit Q.)

Shortly following the June 9, 2016 letter again requesting to schedule a phone interview, Respondent received a letter from the Department of Justice dated July 18, 2016 stating that a petition to enforce the summons would be filed. (*See* Exhibit R, "Letter from DOJ Dated July 18, 2016.") The letter included a copy of the summons issued to Owensboro on April 25, 2016 and responded to by Respondent on May 9, 2016. In response, on August 26, 2016 Respondent again provided responses to each and every item requested, including certain additional documents

obtained from third parties and all email communications in Respondent's possession not subject to the attorney client privilege. (*See* Exhibit S, "Cover Letter to Response to DOJ Letter Dated August 26, 2016.")

Despite Luu's statement in a September 7, 2016 phone conversation with Respondent's counsel that all documents requested were in the IRS' possession with the exception of privileged communications, Luu stated that she would be proceeding with the enforcement proceedings.

**LEGAL AUTHORITY**

**A. <u>Information Requested Already in IRS' Possession</u>**

To obtain enforcement of a summons the Commissioner must show "that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the Commissioner's possession, and that the administrative steps required by the Code have been followed." <u>United States v. Powell</u>, 379 U.S. 48, 57-58, 85 S. Ct. 248, 255, 13 L. Ed. 2d 112 (1964). Respondent acknowledges that the investigation generally is being conducted pursuant to a legitimate purpose, the information requested may be relevant to that purpose, and that the administrative steps have been followed, but argues that the

information sought is already within the Commissioner's possession.

The burden on the IRS as imposed by <u>Powell</u> is generally easily satisfied by a declaration from the investigating agent addressing each of the four elements. <u>United States v. Monumental Life Ins. Co.</u>, 440 F.3d 729, 733 (6th Cir. 2006). Once the IRS has made this showing, the burden shifts to the party opposing enforcement of the summons to demonstrate either that the IRS has not effectively shifted the burden or that enforcement would be an abuse of the court's process. <u>United States v. Monumental Life Ins. Co.</u>, 440 F.3d 729, 733 (6th Cir. 2006).

Pursuant to I.R.C. Section 7605(b), "no taxpayer shall be subjected to unnecessary examination or investigations, and only one inspection of a taxpayer's books of account shall be made for each taxable year unless the taxpayer requests otherwise or unless the Secretary, after investigation, notifies the taxpayer in writing that an additional inspection is necessary." 26 USC § 7605(b). Section 7605(b) requires "that the information sought is not already within the Commissioner's possession." <u>United States v. Powell</u>, 379 U.S. 48, 56, 85 S. Ct. 248, 254, 13 L. Ed. 2d 112 (1964).

If the party opposing enforcement of the summons successfully shows that the IRS does, in fact, possess some of the requested materials in a form it can use in its investigation, the IRS must prove that, in balancing the hardship on the party opposing the summons of again producing the documents, the documents cannot be practicably accessed by the IRS. United States v. Monumental Life Ins. Co., 440 F.3d 729, 735 (6th Cir. 2006). Enforcement of a summons constitutes an abuse of the court's process when the summons has been issued for an improper purpose, such as to harass the taxpayer or for any other purpose reflecting on the good faith of the particular investigation. United States v. Powell, 379 U.S. 48, 58, 85 S. Ct. 248, 255, 13 L. Ed. 2d 112 (1964). As noted in Powell, the prohibition on unnecessary examinations was intended to prevent "overzealous" IRS examiners from requesting repeated examinations that create an "unnecessary annoyance." United States v. Powell, 379 U.S. 48, 54, 85 S. Ct. 248, 253, 13 L. Ed. 2d 112 (1964).

B. **Communications Requested Subject to Attorney-Client Privilege**

KRE Section 503(b) provides that "a client has a privilege to refuse to disclose and to prevent any other person from disclosing a confidential communication made for the purpose of

facilitating the rendition of professional legal services to the client between the client or a representative of the client and the client's lawyer or a representative of the lawyer." KRE Section 503(b). The elements establishing the attorney-client privilege are further defined as requiring that: 1) legal advice of any kind is sought; 2) from a professional legal adviser in his capacity as such; 3) the communications relate to that purpose; 4) are made in confidence; 5) by the client; and 6) the privilege has not been waived. United States v. Goldfarb, 328 F.2d 280, 281 (6th Cir. 1964). A communication is confidential if "not intended to be disclosed to third persons other than those to whom disclosure is made in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication." KRE Section 503(a)(5).

Once the privilege is established, Comment 13 to Rule 1.6 of American Bar Association Model Rules of Professional Conduct provides that the disclosure of any information is prohibited if it would compromise the attorney-client privilege or otherwise prejudice the client. When a communication is protected by the attorney-client privilege it may not be overcome by a showing of need by an opposing party to obtain the information contained in

the privileged communication. The St. Luke Hosps., Inc. v. Kopowski, 160 S.W.3d 771, 777 (Ky. 2005).

## ANALYSIS

The IRS attempts to satisfy its burden under Powell through attaching to its Petition a declaration stating that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the Commissioner's possession, and that the administrative steps required by the Code have been followed. However, in shifting the burden back to the IRS, Respondent hereby demonstrates that the information sought is already within the Commissioner's possession. United States v. Monumental Life Ins. Co., 440 F.3d 729, 735 (6th Cir. 2006).

In this instance, enforcement of the summons would result in a violation of Section 7605(b) requiring "that the information sought is not already within the Commissioner's possession." United States v. Powell, 379 U.S. 48, 56, 85 S. Ct. 248, 254, 13 L. Ed. 2d 112 (1964). On May 9, 2016 Respondent submitted a response to the summons in which Respondent produced a response to each and every item requested, consisting of all the documentation requested in the Respondent's possession. Subsequently, on August 26, 2016 Respondent submitted to the IRS

additional documentation and numerous email communications which consisted of all relevant email communications in response to the summons in Respondent's possession not subject to the attorney-client privilege. The IRS has acknowledged the receipt of said documents in its Petition as well as in a phone conversation between Luu and Respondent's counsel on September 7, 2016 in which Luu stated that she had received all requested documents with the exception of privileged communications.

As a result, the burden shifts back to the IRS to show that the necessity of enforcing the summons to further the investigation outweighs the hardship on Respondent in producing the requested documentation. United States v. Monumental Life Ins. Co., 440 F.3d 729, 735 (6th Cir. 2006). However, the IRS cannot overcome this burden.

The IRS cannot overcome its burden as enforcement of the summons would constitute an abuse of the Court's process because the enforcement action has been brought for the improper purpose of harassing Respondent. United States v. Powell, 379 U.S. 48, 58, 85 S. Ct. 248, 255, 13 L. Ed. 2d 112 (1964). This type of "unnecessary annoyance" through requesting repeated examinations and taxpayer interviews is precisely the activity that Section 7605 was intended to prevent. United States v. Powell, 379 U.S. 48, 54, 85 S. Ct. 248, 253, 13 L. Ed. 2d 112 (1964).

Respondent has continuously complied with every request by the IRS, as acknowledged repeatedly by Luu herself. Despite Luu's own admissions that Respondent had complied with all previous IDRs, Luu issued the summons dated April 25, 2016. Despite Luu's statements on September 7, 2016 that all documents requested in the summons had been received with the exception of privileged communications, she proceeded with this enforcement hearing, costing Respondent thousands of dollars in legal fees to refute enforcement of a summons for documentation which the IRS admits is already in its possession.

Additionally, the IRS' harassment of Respondent through abuse of its authority is further evident in Luu's own statements and requests for an interview with Dr. Crowe and a second interview with Dr. Truett. Despite holding a phone interview with Dr. Truett that lasted an hour twenty three minutes, during which Dr. Truett was wholly compliant providing Luu every opportunity to obtain the desired information, Luu later requested a second interview. Luu stated that the hour and twenty three minute initial interview was not long enough necessitating a second, longer interview which she stated should last at least three hours. Further, despite stating in Respondent's IDR 2 issued July 22, 2015 and during the August 28, 2015 phone interview with Dr. Truett that Dr. Truett's testimony would be sufficient and no interview with Dr. Crowe

was necessary, the IRS later requested an interview with Dr. Crowe in addition to a second interview with Dr. Truett.

Luu now required that both Dr. Crowe and Dr. Truett physically appear at the IRS office in Owensboro, Kentucky although Luu would not herself be present but instead would conduct a phone interview with each doctor from her office in California while each doctor sat in front of at least one third party IRS representative in Kentucky. The reason Luu provided for requiring that the doctors physically appear in the IRS office was that she felt intimidated by the number of Dr. Truett's professional representatives present during Dr. Truett's initial interview. This reasoning is immaterial to the collection of information and assumes that the same legal counsel would not be present if the interviews were held in the IRS' local office. Contrarily, the same parties would be present, as is Dr. Truett and Dr. Crowe's constitutional right, and requiring Dr. Truett and Dr. Crowe to physically appear served no legitimate information collection purpose and would only cause Respondent to incur thousands of dollars in legal fees for its counsel to be present in Owensboro, Kentucky for a phone interview.

Further, the request was entirely meritless, serving no legitimate information collection purpose. Luu is handling audits of 3 other similarly situated captive owner clients of

MIJS, yet Respondent is the only one to receive a request that its officers physically appear at an IRS office to participate in a phone interview. In fact, Luu herself has conducted 2, and scheduled a third, phone interviews with similarly situated captive owner clients of MIJS since the initial interview with Dr. Truett, with the same parties participating in each of those calls, but did not make a similar request for an in-person appearance in any of those other instances. Interestingly, Luu herself has also scheduled 2 phone interviews with similarly situated captive owner clients of MIJS since issuing the summonses to Dr. Crowe and in both instances did not request the taxpayers physically appear at an IRS office to hold the phone interview. Thus, Luu's actions clearly do not support her reasoning for requiring Dr. Truett and Dr. Crowe's physical appearance to hold a phone interview.

However, if the reasoning for the request is accepted, the request becomes a tactic to alleviate Luu's feelings of intimidation through intimidating Dr. Truett and Dr. Crowe by placing them in an IRS office before one or more IRS representatives (not including Luu as she will conduct a phone interview from her California office) and/or to financially burden Dr. Truett and Dr. Crowe in such a manner so as to prevent them from exercising their constitutional right to the presence of counsel. In either instance, the request clearly

does not serve a legitimate information collection purpose and serves only to intimidate and unduly burden Respondent.

These facts demonstrate that the requests for Dr. Truett and Dr. Crowe to physically appear at an IRS location to hold a phone conference were clearly an attempt to harass and intimidate Respondent. Luu's reasoning that the interviews should last at least three hours, making Dr. Truett's one hour and twenty three minute initial interview ineffective, and that she was intimidated by the number of Respondent's representatives present during Dr. Truett's initial interview establish that the request was not made pursuant to a legitimate information collection purpose, but rather to harass and intimidate Respondent.

For these reasons, as well as the fact that Dr. Truett had recently been diagnosed with prostate cancer and cholangiocarcinoma, a cancer of the bile ducts, for which he was scheduled for surgery on May 17, 2016, Dr. Truett and Dr. Crowe notified the IRS that they would not appear at the IRS office on May 19, 2016. Shortly thereafter Respondent received notice that the IRS would file a petition to enforce the summons for documentation, which Luu acknowledges is already in the IRS' possession.

Due to the IRS' continued admission of possession of the requested documentation and improper purpose for which this

enforcement action is sought, Petitioner's request to enforce the summons should be denied and relief granted for Respondent.

Even if it is found that the documents requested are not already in the Commissioner's possession, the IRS cannot overcome the burden of establishing that the necessity for the requested documents outweighs the burden on Respondent in producing the documents as the only documents not produced are confidential communications subject to the attorney-client privilege. United States v. Monumental Life Ins. Co., 440 F.3d 729, 735 (6th Cir. 2006). Because the communications are subject to the attorney-client privilege, the privilege may not be overcome by a showing of need to obtain the information contained in the privileged communication. The St. Luke Hosps., Inc. v. Kopowski, 160 S.W.3d 771, 777 (Ky. 2005).

The email communications requested by the summons are subject to the attorney-client privilege as they contain "confidential communication[s] made for the purpose of facilitating the rendition of professional legal services" to Respondent, the client, between the client or a representative of the client and the client's lawyers. KRE Section 503(b). More specifically, the documents sought include the confidential communication of legal advice from MIJS, a professional legal adviser in its capacity as such, to Respondent pertaining to the legal aspects of its participation in the captive insurance

program. United States v. Goldfarb, 328 F.2d 280, 281 (6th Cir. 1964). The documents sought are confidential communications as they were "not intended to be disclosed to third persons other than those to whom disclosure is made in furtherance of the rendition of professional legal services to the client." KRE Section 503(a)(5). Further, all communications in which the attorney-client privilege has been waived, have been produced by Respondent. United States v. Goldfarb, 328 F.2d 280, 281 (6th Cir. 1964).

Dr. Crowe and Dr. Truett, the equal owners of Respondent, entered into an engagement agreement with MIJS, which operates a Kentucky office located at 2333 Alexandria Drive, Lexington, KY 40504, on March 20, 2009 to provide captive management services pertaining to Beveled Edge. Dr. Crowe and Dr. Truett also entered into an engagement agreement with MIJS to provide captive management services pertaining to Micro Cap and Cavallo Nero on December 11, 2012 and December 10, 2012, respectively. The insurance attorneys providing captive management services are the same attorneys providing captive and non-captive legal services through MIJS to Dr. Truett and Dr. Crowe personally as well as regarding Respondent, Dermatology Property and Beveled Edge. The email communications contain communications between the attorneys of MIJS and Dr. Truett, Dr. Crowe, Brenda Clayton and/or Sara Burden as representatives of Respondent.

The communications contain legal advice provided by MIJS pertaining to the captive management of Respondent's captive insurance company. As the captive manager, the attorneys of MIJS advised Respondent, in the communications sought, as to its captive's ongoing compliance with the governing state and federal laws and guidance established by the Kentucky Department of Insurance, case law and the IRS. The communications were clearly intended to remain confidential as evident by the "Confidentiality Notice" provisions in each email from MIJS to Respondent specifically stating as such. The communications were made in furtherance of MIJS' rendition of legal advice pertaining to the formation, management and claims adjustment of Respondent's captives.

As such, the email communications are subject to the attorney-client privilege and disclosure of these communications is strictly prohibited without Respondent's consent. KRE Section 503(b). Further, Comment 13 to Rule 1.6 of the American Bar Association Model Rules of Professional Conduct specifically prohibits the disclosure of any information that would compromise the attorney-client privilege. Consequently, Petitioner's request to enforce the summons should be denied and relief granted for Respondent.

Finally, although no Tax Court litigation was pending at the time the summons was issued, Luu issued notices of

deficiency to Beveled Edge, Micro Cap, Dr. Crowe, Cavallo Nero and Dr. Truett just over a month after issuing the summons to Respondent, further demonstrating that enforcement of the summons is unnecessary as the desired information can be acquired through the Tax Court discovery process.

**CONCLUSION**

Respondent has established, through the IRS' own admissions, that the documents requested are already in the IRS' possession with the exception of privileged communications. As a result, the burden shifts to the IRS to establish that the need for the documentation requested outweighs hardship to Respondent in producing the documentation. The IRS cannot overcome this burden as enforcement of the summons would result in abuse of the Court's process since the enforcement action was initiated and pursued for the purpose of harassing Respondent and not for any legitimate information collection purpose. Further, enforcement of the summons would result in abuse of the Court's process as the only documentation not in the IRS' possession is confidential communications subject to the attorney-client privilege. Thus, Petitioner's request to enforce the summons should be denied and relief granted for Respondent.