# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF KENTUCKY
# OWENSBORO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| PETITIONER | ) Civil Action No. 4:16-mc-00003-JHM |
| v. | ) CHIEF JUDGE JOSEPH H. MCKINLEY, JR. |
| OWENSBORO DERMATOLOGY ASSOCIATES, P.S.C. | ) |
| RESPONDENT | ) |

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| PETITIONER | ) Civil Action No. 4:16-mc-00004-JHM |
| v. | ) CHIEF JUDGE JOSEPH H. MCKINLEY, JR. |
| DERMATOLOGY PROPERTY MANAGEMENT, LLC | ) |
| RESPONDENT | ) |

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| PETITIONER | ) Civil Action No. 4:16-mc-00005-JHM |
| v. | ) CHIEF JUDGE JOSEPH H. MCKINLEY, JR. |
| BEVELED EDGE INSURANCE COMPANY | ) |
| RESPONDENT | ) |

# MEMORANDUM OPINION AND ORDER

## BACKGROUND

Before the Court are the United States' motions to compel production, and in the alternative, motions for *in camera* review of all communications identified in Respondents' revised privilege logs (4:16-mc-00003, DN 15; 4:16-mc-00004, DN 15; 4:16-mc-00005, DN 15). Respondents, Owensboro Dermatology Associates, PSC, Dermatology Property Management, LLC, and Beveled Edge Insurance Company (collectively "Respondents"), have filed objections to the motions (4:16-mc-00003, DN 16; 4:16-mc-00004, DN 16; 4:16-mc-00005, DN 16). The United States has filed replies to each objection (4:16-mc-00003, DN 19; 4:16-mc-00004, DN 20; 4:16-mc-00005, DN 20).

After completing a thorough review of the parties' memoranda, the revised privilege logs, and applicable law, the undersigned concluded that an *in camera* review must be conducted of all the emails identified in the revised privilege logs to determine whether the attorney-client privilege applies to each of the withheld emails (4:16-mc-00003, DN 21; 4:16-mc-00004, DN 21; 4:16-mc-00005, DN 21). Pursuant to the order entered June 14, 2017, Respondents submitted directly to the undersigned's Bowling Green chambers for *in camera* review all of the emails identified in their revised privilege logs (Id.). The undersigned has completed the *in camera* review of the emails. This matter is ripe for determination.

## FINDINGS OF FACT

Dr. Michael J. Crowe and Dr. Artis P. Truett are equal shareholders in Owensboro Dermatology Associates, PSC, a Kentucky professional services corporation ("Owensboro") (4:16-mc-00003, DN 7-1 PageID # 45). Owensboro is a dermatological medical practice specializing

in the treatment of skin cancer, moles, eczema, acne, etc. (Id.). Drs. Crowe and Truett are equal partners in Dermatology Property Management LLC, a real estate investment company ("Dermatology Property") (Owensboro and Dermatology Property will be collectively referred to as the "Insured Entities") (Id. PageID # 45-46).

On December 2, 2008, Drs. Crowe and Truett incorporated Beveled Edge, a C corporation organized under the laws of the state of Kentucky (Id. PageID # 46). "Beveled edge timely elected to be taxed under Internal Revenue Code ('IRC') Section 831(b) as a captive insurance company providing direct property and casualty insurance policies to the Insured Entities to cover risks of the businesses supplemental to those covered by their commercial policies until such time as its surplus grows to a point the Insured Entities could begin to replace their commercial policies with policies issued by Beveled Edge" (Id.). After jointly operating Beveled Edge from 2008 through the 2011 policy period, Drs. Crowe and Truett made the business decision to dissolve it and each establish his own captive insurance company to insure his portion of the risks of the Insured Entities (Id.).

In November 2012, Dr. Crowe formed Micro Cap KY Insurance Company, Inc., and Dr. Truett formed Cavallo Nero Insurance, Inc.[1] (Id. PageID # 46-47). Micro Cap and Cavallo Nero provide direct property and casualty insurance policies to the Insured Entities (Id.).

The law firm of Moore Ingram Johnson & Steele, LLP ("MIJS") has provided ongoing captive and non-captive legal advice to Drs. Crowe and Truett personally as well as regarding the Insured Entities since 2006 (Id. PageID # 59-60). On March 20, 2009, Doctors Crowe and Truett entered into a captive management agreement with MIJS to provide captive management services regarding Beveled Edge (Id. PageID # 60). The captive management agreement was issued on MIJS law firm

---

1 Micro Cap KY Insurance Company, Inc. and Cavallo Nero Insurance, Inc. were organized as C corporations and elected tax treatment as Section 831(b) captive insurance companies (4:16-mc-00003, DN 7-1 PageID # 46-47).

3

letterhead (Id.). Doctors Crowe and Truett also entered into an engagement agreement with MIJS to provide captive management services regarding Micro Cap and Cavallo Nero on December 11, 2012 and December 10, 2012 respectively (Id.).

MIJS Captive Management, LLC managed Beveled Edge and currently manages Mirco Cap and Cavallo Nero under the terms of Captive Management Agreements (Id. PageID # 59). MIJS Captive Management "is a wholly owned subsidiary of the law firm of MIJS and has no assets, no employees and no income or losses" (Id.). MIJS Captive Management "does not even have a bank account as all revenue generated by captive management services flows directly to MIJS" (Id.). MIJS Captive Management does not have letterhead as its "existence is purely for optical purposes" (Id.). "[T]he insurance attorneys providing captive management services do so through MIJS" (Id.).

In October 2014, the Internal Revenue Service began auditing Beveled Edge and the Insured Entities (Id. PageID # 47-48). As part of this inquiry, the IRS issued summonses on April 25, 2016, requiring each of them to produce several categories of documents for examination (4:16-mc-00003, DN 15-2 PageID # 222-29; 4:16-mc-00004, DN 15-2 PageID # 208-15; 4:16-mc-00005, DN 15-2 PageID # 192-99). On May 9, 2016, Beveled Edge and the Insured Entities produced all documents identified in the summonses, except for a series of email communications between MIJS attorneys and Dr. Crowe, Dr. Truett, Angie Grant (assistant to Dr. Crowe regarding Beveled Edge and the Insured Entities), Sara Burden (assistant to Dr. Truett regarding Beveled Edge and the Insured Entities), and Brenda Clayton (an agent of Beveled Edge providing accounting and advisory services to Beveled Edge and the Insured Entities) (4:16-mc-00003, DN 7-1 PageID # 60 and DN 16-3 Affidavit of Dr. Crowe PageID # 498). Beveled edge and the Insured Entities assert that the withheld email communications were made in furtherance of MIJS' providing legal advice pertaining to their participation in the captive insurance program (Id.).

4

On June 8, 2016, the IRS issued notices of deficiency to Michael J. Crowe and Julie W. Crowe and to Artis P. Truett and Allison H. Truett (collectively "the Crowes and Truetts") for taxable years 2012, 2013, and 2014 determining, in part, that $1,114,916, $740,029, and $881,392 in insurance expenses claimed by Owensboro for taxable years 2012, 2013, in 2014, respectively, should be disallowed because the purported insurance and/or reinsurance transactions lack economic substance, the substance of the transactions do not comport with their form, the various steps involved in the transactions were engaged in for no purpose other than to avoid or evade tax, the expenses were not ordinary and necessary to Owensboro's business, and the amounts were not paid to an insurance company and were not paid for insurance (4:16-mc-00003, DN 15 PageID # 197-98). Additionally, the notices of deficiency determined that the Crowes and Truetts are liable for the I.R.C. § 6662(i) penalty and, in the alternative, the I.R.C. § 6662(h) penalty (Id.).

Also on June 8, 2016, the IRS issued notices of deficiency to the Crowes and Truetts for taxable years 2012, 2013, and 2014 determining, in part, that $76,896, $76,896, and $127,008 in insurance expenses claimed by Dermatology Property for the taxable years 2012, 2013, and 2014, respectively should be disallowed because the purported insurance and/or reinsurance transactions lack economic substance, the substance of the transactions do not comport with their form, the various steps involved in the transactions were engaged in for no purpose other than to avoid or evade tax, the expenses were not ordinary and necessary to Dermatology Property's business, and the amounts were not paid to an insurance company and were not paid for insurance (4:16-mc-00004, DN 15 PageID # 183-84). Additionally, the notices of deficiency determined that the Crowes and Truetts are liable for the I.R.C. § 6662(i) penalty and, in the alternative, the I.R.C. § 6662(h) penalty (Id.).

Additionally, on June 8, 2016, the IRS issued a notice of deficiency for Beveled Edge's 2012 tax year determining that the transactions were not insurance transactions within the meaning of

federal tax law, that Beveled Edge was not an insurance company for purposes of section 831(b), that Beveled Edge was not eligible for tax treatment under section 831(b), that the amounts Beveled Edge was entitled to, and/or received, under a purported captive insurance program were included in Beveled Edge's gross income under section 61, and that Beveled Edge was liable for penalties pursuant to section 6662(h) (4:16-mc-00005, DN 15 PageID # 172-73).

On September 8, 2016, the IRS filed the instant petitions to enforce the summonses (4:16-mc-00003, DN 1; 4:16-mc-00004, DN 1; 4:16-mc-00005, DN 1). Adjudication regarding the production of documents was deferred pending Respondents providing revised privilege logs and the United States' review (4:16-mc-0003, DN 14; 4:16-mc-00004, DN 14; 4:16-mc-00005, DN 14). After reviewing the revised privilege logs, the United States filed the motions to compel on March 10, 2017 (4:16-mc-00003, DN 15; 4:16-mc-00004, DN 15; 4:16-mc-00005, DN 15).

Meanwhile, on September 9, 2016, the Crowes and Truetts, through their counsel, filed petitions with the United States Tax Court challenging the IRS's June 8, 2016 notices of deficiency (4:16-mc-00003, DN 15-3 PageID # 231-88, DN 15-4 PageID # 290-347). The petitions filed by the Crowes and Truetts allege that the Insured Entities purchased legitimate insurance from the captive insurers and they are entitled to deduct those expenses (4:16-mc-00003, DN 15-3 PageID # 231-43, DN 15-4 PageID # 290-301). The Crowes and Truetts assert that they "relied solely on the advice of counsel for all positions taken on the income tax returns for the 2012, 2013 and 2014 tax years " (4:16-mc-00003, DN 15-3 PageID # 241, DN 15-4 PageID # 300).

On September 9, 2016, counsel filed on behalf of Beveled Edge, Micro Cap, and Cavallo Nero petitions with the United States Tax Court challenging the IRS's June 8, 2016 notices of deficiency (4:16-mc-00003, DN 15-5 PageID # 349-77, DN 15-6 PageID # 379-405, DN 15-7 PageID # 407-39). Each captive insurer argues that it operates an insurance company, and is entitled to exclude premium

income under I.R.C. § 831(b) (4:16-mc-00003, DN 15-5 PageID # 349-57, DN 15-6 PageID # 379-86, DN 15-7 PageID # 407-14). Micro Cap and Cavallo Nero assert they "relied solely on the advice of counsel for all positions taken on the income tax returns for the 2012, 2013 and 2014 tax years " (4:16-mc-00003, DN 15-5 PageID # 355, DN 15-6 PageID # 385). Beveled Edge asserts that it "relied solely on the advice of counsel for all positions taken on the income tax return for the 2012 tax year" (DN 15-7 PageID # 413).

## CONCLUSIONS OF LAW

As previously mentioned, the United States filed motions to compel production, and in the alternative, motions for *in camera* review of all communications identified in the revised privilege logs (4:16-mc-00003, DN 15; 4:16-mc-00004, DN 15; 4:16-mc-00005, DN 15). In an order entered June 14, 2017, the undersigned granted the United States' motions for *in camera* review of all communications identified in the revised privilege logs (4:16-mc-00003, DN 21; 4:16-mc-00004, DN 21; 4:16-mc-00005, DN 21). The undersigned conducted an *in camera* review of the emails identified in the revised privilege logs to determine whether the attorney-client privilege applies to each of the withheld emails. Therefore, all that remains pending before the Court is the United States' motions to compel production.

A

1. The United States' Argument

The United States asserts that Respondents waived the attorney-client privilege when they raised advice of counsel as a defense in their petitions filed with the United States Tax Court (4:16-mc-00003, DN 15 PageID # 199-202). The United States points out that Respondents' petitions before the Tax Court allege that imposition of an accuracy penalty was erroneous because they relied solely on the advice of counsel for all positions taken on the income tax returns. The United States

7

argues all of the emails must be considered to assess whether Respondents reasonably relied in good faith on the advice of counsel (Id.). *See* IRC § 6664(c)(1); Treas. Reg. § 1.6664-4(c)(1) and (2); Ad Inv. 2000 Fund LLC v. Comm'r, 142 T.C. 248, 254-58 (2014) (by pleading reasonable cause and reliance on counsel, a taxpayer forfeits any privilege that would otherwise apply to the legal opinion). The United States points out that Respondents' petitions before the Tax Court also challenge the IRS's determination that the captive insurance arrangement lacked economic substance (Id.). The United States contends that the Tax Court will need to review the emails to assess Respondents' subjective understanding of the transaction. *See* Dow Chemical Co. v. United States, 435 F.3d 594, 599 (6th Cir. 2006) (requiring that a taxpayer demonstrate that they were motivated by profit to participate in the transaction).

2. Respondents' Arguments

Respondents argue that a waiver has not occurred because the subject matter in the emails is not related to the reasonable cause and good-faith defenses raised in their petitions before the Tax Court (4:16-mc-00003, DN 16 PageID # 463-72). *See* In re Lott, 424 F.3d at 453 (the waiver should be construed no broader than needed to ensure the fairness of the proceeding); Ad Inv. 2000, 142 T.C. at 250-51 (waiver of the attorney-client privilege limited to six opinion letters counsel issued before petitioner entered into the transaction because they pertain to whether the petitioner reasonably believed that its tax treatment taken on its return was more likely than not the proper tax treatment); Bauer v. County of Saginaw, No. 14-CV-11158, 2015 WL 1439424, at *1 (E.D. Mich. Mar. 27, 2015) (waiver of the attorney-client privilege limited to communications that pertain to the good faith belief defense). Respondents explain that their defense to accuracy related penalties relies upon the Internal Revenue Code, Treasury Regulations, governing case law, and IRS Revenue Rulings as substantial authority and reliance upon the tax return preparer regarding positions taken on the tax returns

(4:16-mc-00003, DN 16 PageID # 468). Respondents contend the emails are irrelevant to their subjective intent at the time they entered into the captive insurance transaction because the emails were generated at a later point in time and contain requests for and receipt of legal advice pertaining to management of Beveled Edge. Respondents argue the question of whether they have waived the attorney-client privilege should not be based on the IRS's allegation-in the notice of deficiency-that the transaction lacked economic substance. Respondents encourage this Court to allow the Tax Court to address the issue of waiver should it become an issue in that proceeding. *See* Ad Inv. 2000, 142 T.C. at 258. Respondents point out that in related cases pending before the Eastern District of Kentucky, Senior District Judge Hood concluded that the Tax Court should address the waiver issue to avoid an unjustifiable encroachment of the attorney-client privilege. *See* United States v. Micro Cap Ky. Ins., No. 5:16-cv-278-JMH-REW, 5:16-cv-279-JMH-REW, 2017 WL 1132904, at *3 (E.D. Ky. Mar. 27, 2017) (appeal filed) (petitions to enforce IRS summonses).

    3. The United States' Reply

The United States argues that Respondents petitions before the Tax Court have put the substance of the insurance transactions at issue, including all underlying facts they claim are protected by the attorney-client privilege (4:16-mc-00003, DN 19 Page ID # 516-17; 4:16-mc-00004, DN 20 PageID # 503-04; 4:16-mc-00005, DN 20 PageID #484-85). *See* New Phoenix Sunrise Corp. v. Comm'r, 408 F. App'x 908, 919-20 (6th Cir. 2010) ("By asserting [reasonable reliance], New Phoenix has put the subject matter of the tax opinion at issue, making its disclosure appropriate."); Karme v. Comm'r, 73 T.C. 1163, 1183-84 (1980). Alternatively, the United States contends because there has been an intentional waiver of the attorney-client privilege the Court should extend the waiver to all of the undisclosed emails because they ought, in fairness, to be considered to obtain a full picture of the transactions, substance of the arrangements and activity, and

9

advice offered by MIJS. *See* FRE 502(a); New Phoenix, 408 F. App'x 908, 919 (6th Cir. 2010); In re Grand Jury Proceedings October 12, 1995, 78 F.3d 251, 254 (6th Cir. 1996).

B

1. The Attorney-Client Privilege

The attorney-client privilege "is the oldest of the privileges for confidential communications known to the common law." Upjohn Co. v. United States, 449 U.S. 383, 389, (1981) (citations omitted). The aim of this privilege is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." 449 U.S. at 389; Hunt v. Blackburn, 128 U.S. 464, 470 (1888). That goal, of course, requires that clients be able to "make full disclosure to their attorneys" of past wrongdoings, Fisher v. United States, 425 U.S. 391, 403 (1976), so that the client may receive "the aid of persons having knowledge of the law and skilled in its practice." Hunt, 128 U.S. at 470. Because the attorney-client privilege has the effect of withholding relevant information from the factfinder, it is applied "only where necessary to achieve its purpose and protects only those communications necessary to obtain legal advice." In re Antitrust Grand Jury, 805 F.2d 155, 162 (6th Cir. 1986) (citing Fisher, 425 U.S. at 403). Further, "[t]he privilege cannot stand in the face of countervailing law or strong public policy and should be strictly confined within the narrowest possible limits underlying its purpose." United States v. Goldberger & Dubin, P.C., 935 F.2d 501, 504 (2d Cir. 1991).

Questions of privilege that arise in the course of the adjudication of federal rights are governed by federal common law. Fed.R.Evid. 501.[2] Thus, federal common law of privilege

---

2 Rule 501 of the Federal Rules of Evidence provides that, except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory

applies when the attorney-client privilege is raised in an action to enforce an IRS summons. *See* United States v. Zolin, 491 U.S. 554, 562 (1989).

Under federal common law the elements of the attorney-client privilege are as follows:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his insistence permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived.

Reed v. Baxter, 134 F.3d 351, 355–56 (6th Cir. 1998) (citing Fausek v. White, 965 F.2d 126, 129 (6th Cir.1992); United States v. Goldfarb, 328 F.2d 280, 281 (6th Cir.1964)). The party asserting the attorney-client privilege must prove that it applies. United States v. Dakota, 197 F.3d 821, 825 (6th Cir. 1999); In re Grand Jury Investigation No. 83-2-35, 723 F.2d 447, 450 (6th Cir. 1983). In doing so, the party must demonstrate that the privilege has not been waived. In re OM Securities Litigation, 226 F.R.D. 579, 590 (N.D. Ohio 2005). The determination whether the attorney-client privilege applies is a mixed question of law and fact. Reed, 134 F.3d 355-56.

Here, Respondents are asserting the attorney-client privilege applies to the withheld emails. Therefore, Respondents have the burden of proving the applicability of the attorney-client privilege and that they have not waived the privilege as to the emails.

The undersigned has completed a thorough *in camera* review of the emails withheld by Respondents on claim of attorney-client privilege. All of the emails satisfy elements one through seven in the test articulated in Reed. 134 F.3d at 355-56. Some of the documents, to a limited degree, involve an aspect of business management or business considerations. However, the undersigned finds that each document predominantly involves legal advice within the retention of

---

authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.

the counsel involved and is properly restricted to persons within the privilege sphere. As part of the basis for this finding, the undersigned notes and relies on the affidavit-based roster of relevant persons filed in the record (4:16-mc-00003, DN 16-3). All relevant persons are either within the law firm or an agent or employee of Respondents. Drs. Crowe and Truett were the joint owners of Beveled Edge and are co-owners of the Insured Entities. Each used the same integrated staff, Sara Elder (Sara Burden) and Angie Grant, to make confidential communications to assist the lawyers in performing legal counseling to Respondents. Brenda Clayton provided accounting and advisory services to Beveled Edge and the Insured Entities. The undersigned finds that she acted as an agent or representative of Beveled Edge and the Insured Entities because it is clear from the emails that Drs. Crowe and Truett had authorized her to make and receive confidential communications for the purpose of assisting the lawyers in performing legal counseling to Beveled Edge and the Insured Entities. Thus, the only issue remaining is whether there has been a waiver of the attorney-client privilege as to the emails.

    2. Whether The Attorney-Client Privilege Has Been Waived

The attorney-client privilege "may be waived expressly or by implication in several ways." In re Lott, 424 F.3d 446, 452 (6th Cir. 2005). The privilege is waived expressly by the voluntary disclosure of private communications to third parties. Id.; New Phoenix sunrise Corp. v. Comm'r Internal Revenue, 408 F. App'x 908, 918 (6th Cir. 2010) (citing In re Columbia/HCA Healthcare Corp., 293 F.3d 289, 306 (6th Cir. 2002); United States v. Dakota, 197 F.3d 821, 825 (6th Cir. 1999)).

The evolution and structure of all three Respondent entities shows an integrated path from the lone captive entity, Beveled Edge, to the Insured Entities. This involved direct and thorough

participation of both owners, at logical points, and much of the management and decisional information over time funneled through a common administrative source for Drs. Crowe and Truett. The owners, Drs. Crowe and Truett, jointly retained the law firm MIJS for the purposes of captive management and compliance. The undersigned sees clear commonality of interest, counsel, ownership history, management, insured operation/ownership, and personnel that, in this context, prevents waiver and keeps the privilege intact despite the separate ownership of the later captives, Micro Cap and Cavallo Nero. In assessing the privileged status of the emails at issue, the undersigned has considered the real-world structure of the relationships, including the joint retention of the law firm and the need for legal advice on identical issues and concerns. The undersigned concludes that the common-interest privilege is applicable to the email communications generated in these circumstances. "The common interest privilege is not an independent basis for privilege, but an exception to the general rule that the attorney-client privilege is waived when privileged information is disclosed to a third party." Edna Selan Epstein, *The Attorney-Client Privilege and the Work-Product Doctrine*, American Bar Association Section of Litigation at 356 (6th ed. 2017). It expands the coverage of the attorney-client privilege to include situations in which two or more clients with a common legal or commercial interest in a matter agree to share legal advice with respect to that common interest. Cooey v. Strickland, 269 F.R.D. 643, 652 (S.D. Ohio 2010); Broessel v. Triad Guar. Ins. Corp., 238 F.R.D. 215, 220 (W.D. Ky. 2006). Thus, the undersigned finds the attorney-client privilege has not been expressly waived to the extent that some of the email communications involve all three Respondent entities, their agent, their underlying principles, or employees of the underlying principles.

13

The privilege may be waived implicitly by the client's taking an affirmative step to place counsel's advice at issue in the litigation. In re Lott, 424 F.3d at 452-53, 455 (citations omitted). For example, the client asserts a claim or defense that places his attorney's advice at issue in the litigation. Id.

With regard to the Insured Entities, the Crowes and Truetts have asserted in their petitions before the Tax Court that the IRS erred in determining that: the purported insurance and/or reinsurance transactions lack economic substance; the substance of the purported insurance and/or reinsurance transactions do not comport with the form of said transactions; the various steps involved in the purported insurance and/or reinsurance transactions were engaged in for no purpose other than to avoid or evade tax; and the amounts disallowed were not paid to an insurance company and not paid for insurance (4:16-mc-00003, DNs 15-3 and 15-4 ¶s 4d-f, h, j-l, n). Additionally, in their petitions, the Crowes and Truetts assert that they "relied solely on the advice of counsel for all positions taken on the income tax returns for the 2012, 2013 and 2014 tax years" (4:16-mc-00003, DNs 15-3 and 15-4 ¶ 5aa).

Beveled Edge has asserted in its petition before the Tax Court that the IRS erred in determining that: the transactions reported as premium income were not insurance transactions within the meaning of federal tax law; it was not an insurance company for purposes of I.R.C. § 831(b); it was not eligible for tax treatment under I.R.C. § 831(b); and amounts it was entitled to and/or received under a purported captive insurance program are includable in its gross income under I.R.C. § 61 (4:16-mc-00005, DN 15-3 ¶s 4(a)-(d)). Additionally, in its petition, Beveled Edge asserts that it "relied solely on the advice of counsel for all positions taken on the income tax return for the 2012 tax year" (4:16-mc-00005, DN 15-3 ¶ 5s).

Respondents' petitions before the Tax Court articulate a "reasonable cause" defense. The undersigned notes that use of the "reasonable cause" defense may result in an implicit waiver of the attorney-client privilege in proceedings before the Tax Court. *See* Ad Investment 2000, 142 T.C. at 254-55, 258-59. However, it bears mentioning that assertion of the "reasonable cause" defense in a petition before the Tax Court does not necessarily result in the automatic disclosure of privileged documents. Id. at 258-59. Rather, it merely provides the United States with grounds to compel the production of documents subject to the attorney-client privilege. Id.; *see also* Tax Court Rules 70, 72. Even when a motion to compel before the Tax Court is meritorious, the case law suggests that disclosure may not necessarily result. For example, in Ad Investment 2000, the Tax Court found that the petitioners had waived their attorney-client privilege by putting protected communications at issue. 142 T.C. at 258. The Tax Court ordered the petitioners to produce the privileged documents and indicated if they did not comply it would entertain the Commissioner's motion to sanction them by prohibiting the introduction of evidence in support of their "reasonable cause" defense. 142 T.C. at 258. However, the Tax Court simultaneously indicated that the petitioners could still protect their documents from disclosure by abandoning their "reasonable cause" defense. Id. at 259 ("If petitioners persist, they sacrifice the privilege to withhold the contents of the opinions.").

Here, by raising the "reasonable cause" defense in their petition, Respondents have provided the Commissioner with grounds to request that the Tax Court compel production of documents subject to the attorney-client privilege. There is no indication in the record that the Commissioner has made such a request before the Tax Court, and even if he had, case law indicates that production does not necessarily follow. In essence, the United States asks this

Court to order disclosure of privileged material based on what it believes *will* happen before the Tax Court. Because the Tax Court litigation is in an early stage, the undersigned hesitates to rely too heavily on the United States' predictions. If respondents persist in asserting the "reasonable cause" defense, then disclosure of privileged documents may later result before the Tax Court. This, however, is a strategic choice that must be made by Respondents in the Tax Court proceedings at some later point in time. Should Respondents make the strategic choice to persist with their "reasonable cause" defense and produce the privileged communications setting forth the legal advice they purportedly relied on, the Tax Court will be in a far better position to determine which of these emails are related to the legal advice. *See* FRE 502(a) (when the waiver is intentional it extends to undisclosed communications concerning the same subject matter that "ought in fairness to be considered together"); New Phoenix Sunrise Corp., 408 F. App'x at 910-11, 919-21 (all of the documents subject to the Tax Court's disclosure order related to the subjective knowledge and motivations of New Phoenix's agents during the execution of the transaction and the preparation and filing of the tax return). For these reasons, the United States' argument fails on the merits, and this Court will not force Respondents' hand by ordering the disclosure of documents that are otherwise privileged.

## ORDER

**IT IS HEREBY ORDERED** that the United States' motions to compel production of all communications identified in Respondents' revised privilege logs (4:16-mc-00003, DN 15; 4:16-mc-00004, DN 15; 4:16-mc-00005, DN 15) are **DENIED**.

**IT IS FURTHER ORDERED** that **by no later than July 21, 2017**, the parties shall file a joint status report, indicating whether any issues remain in this case.

Copies:   Counsel